**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                   |     |                        |
|-----------------------------------|-----|------------------------|
|                                   |  *  |                        |
| **BLAKE R. VAN LEER II,**         |  *  |                        |
| **Plaintiff**                     |  *  |                        |
| **v.**                            |  *  | **CIVIL NO.  JKB-10-1076** |
| **DEUTSCHE BANK SECURITIES, INC.,** |  *  |                        |
| **Defendant**                     |  *  |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

Pending before the Court is the motion of Defendant Deutsche Bank Securities, Inc. ("DBSI"), to dismiss the complaint for lack of jurisdiction, improper venue, and failure to state a claim under Rule 12(b)(1), (3), and (6), Federal Rules of Civil Procedure.  The Court has considered it, Plaintiff's response, and Defendant's reply (ECF Nos. 14, 19, 22).  No hearing is necessary.  Local Rule 105.6.  The motion will be granted by separate order.

Plaintiff Blake R. Van Leer II has sued DBSI for breach of contract, negligence, tortious interference with prospective business opportunity, negligent misrepresentation, and fraud.  Van Leer alleges that, while he was a debtor in possession during bankruptcy proceedings, he, through a business broker, approached DBSI in early 2007 about either selling or obtaining a loan in relation to a royalty that paid him in excess of $1.3 million dollars each year; the royalty was expected to continue for approximately thirty more years.  (Compl. ¶¶ 9, 11-13, ECF No. 1.) His plan was to realize sufficient revenue to pay off his creditors, to emerge from bankruptcy, and to receive additional working capital.

DBSI sent Van Leer a confidentiality agreement, dated April 17, 2007, under which Van Leer was to provide certain nonpublic information to DBSI "for the sole purpose of determining [DBSI's] interest in participating in the Transaction." (Compl. Ex. A.) DBSI agreed "to take reasonable precautions to maintain the confidentiality of the Evaluation Material and to inform its representatives of the confidential nature of the Evaluation Material." (*Id.*) On May 14, 2007, DBSI sent a letter to Van Leer that indicated DBSI's interest in arranging or providing financing, based upon the royalty, in an approximate amount of $23 million. (Compl. Ex. B.) DBSI further indicated various conditions before the transaction could be consummated, including due diligence and approval of the bankruptcy court. (*Id.*)

Van Leer alleges that DBSI's attorneys communicated with the attorneys for Van Leer's creditors' committee, "[a]nd shortly thereafter, the [committee] suddenly decided to auction the [r]oyalty stream." (Compl. ¶ 18.) The committee gave notice on June 26, 2007, that it would auction the asset on July 9, 2007. (*Id.* ¶ 19.) Van Leer also alleges that he hastily attempted to find another purchaser, but insufficient time for due diligence prevented his being able to present that option to the bankruptcy court. (*Id.* ¶ 20.) At the auction, DBSI submitted the high bid of $16.9 million (against two other bidders). (*Id.* ¶ 21.) The bankruptcy court approved the sale on July 23, 2007, and DBSI closed on the transaction on July 24, 2007. (*Id.* ¶¶ 22-23.)

In evaluating this motion to dismiss, the Court must determine whether the plaintiff has satisfied the pleading standard of Rule 12(b)(6), i.e., whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a mere possibility of misconduct is not sufficient to

support a plausible claim. *Id.* at 1950. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

The essence of Van Leer's complaint is that DBSI breached its duty of good faith and fair dealing implicit in their contractual relationship by first contacting the creditors' committee and then taking advantage of information supplied by him to his detriment by inserting itself into the bankruptcy proceedings as a buyer of Van Leer's only valuable asset at a price well below DBSI's proposed financing transaction. He fails to indicate what information was communicated by DBSI's attorneys to the creditors' committee's attorneys. Certainly, DBSI was not barred by the confidentiality agreement from contacting the creditors' committee's attorneys; it was only prohibited from disclosing nonpublic information. It is not enough for Van Leer to plead *his* conclusion that DBSI gave confidential information to the other attorneys. As the Supreme Court has made clear, the factual allegations must allow a *court* to conclude the defendant has engaged in misconduct. All that can be gleaned from his complaint is a matter of timing in the communications, i.e., DBSI's attorneys communicated with the creditors' committee's attorneys and, right after that, the creditors' committee decided to auction the royalty asset. But the notion that those two events are connected by misconduct stretches the imagination. Moreover, as noted, the confidentiality agreement only protected from disclosure nonpublic information supplied by Van Leer to DBSI. The matters of record in his bankruptcy proceeding[1] do not fall within the category of nonpublic information, and what the bankruptcy court record included was plenty of information about the creditors' committee's intent to sell the royalty and the price it had negotiated with a third party, Barclays Bank. (Mot. Dismiss Ex. A at 18 (Bankr. D. Md. 99-62043, Doc. 583 at 23), ECF No. 14.) That negotiated price, $11.5

---

[1] It is proper to consider matters of public record in evaluating a motion to dismiss. *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 276, 180 (4th Cir. 2009).

million, was several million dollars less than the amount ultimately paid by DBSI for the royalty asset. (*Id.*) Interestingly enough, Van Leer had put into the bankruptcy court record his proposed plan for paying his creditors by borrowing from a company the sum of $11 million, using the royalty stream as collateral. (Mot. Dismiss, Ex. J at 12 (Bankr. D. Md. 99-62043, Doc. 589 at 12 & Ex. B), ECF No. 14.) All of that highly pertinent information predated DBSI's "indication of interest" in financing the royalty stream. The court record refutes Van Leer's allegation that it was DBSI's contact with the creditors' committee's attorneys that precipitated the decision to sell the royalty asset. Even if it had, mere contact without disclosure of nonpublic information would not be actionable.

His complaint further fails to allege that DBSI was contractually bound to supply financing. The May 14, 2007, letter from DBSI is carefully couched in qualifying language and clearly does not obligate DBSI either to purchase the royalty stream or to lend money with the royalty stream as collateral. Thus, although it was obviously Van Leer's hope that DBSI would grant him $23 million, either through purchase of or loan on the royalty asset, DBSI was not bound to do so. One cannot draw the conclusion from this complaint that DBSI breached any agreement with Van Leer.

Van Leer's negligence count is premised upon an alleged failure "to process and consider Van Leer's application and to exercise that degree of care that a reasonably prudent bank would have exercised under similar circumstances." (Compl. ¶ 33.) Since the complaint contains no factual allegations to support this count, one must surmise that its real basis is Van Leer's disagreement with DBSI's decision not to transfer $23 million to Van Leer either as a purchase of the royalty asset or as a loan. To speculate that DBSI's decision was somehow based on negligence is not permissible. Van Leer does not plead sufficient facts to permit a conclusion that DBSI failed in a duty of care.

The next count in the complaint is tortious interference with a prospective business opportunity. This claim rests on a convoluted theory that DBSI interfered with Van Leer's prospect of obtaining $23 million from DBSI. In Maryland, one cannot sue a party to a contract for tortious interference with that same contract. *See Blondell v. Littlepage*, 991 A.2d 80, 97-98 (Md. 2010). Furthermore, as noted earlier, DBSI was not bound to advance $23 million to Van Leer; it had only indicated its interest in arranging financing at that level and further indicated that a final decision would be necessarily based on various factors, including due diligence and approval by the bankruptcy court.[2] Finally, another fundamental flaw in Van Leer's theory is that, without DBSI's active bidding in the bankruptcy auction, the amount finally realized from sale of the royalty asset would have been less. That there was nothing left over to provide funds to Van Leer once all bankruptcy claims had been satisfied, which would have occurred whether or not DBSI was the successful bidder, seems to be Van Leer's chief complaint. The inevitable sale of the asset would occur at market value regardless of whether Van Leer would walk away with money in his pocket. This count is implausible.

Next, Van Leer alleges negligent misrepresentation. He alleges DBSI owed him "a duty of care to ensure that its representations were truthful concerning its intention to consider and process Van Leer's loan/sale application in good faith and with reasonable diligence." (Compl. ¶ 42.) This count boils down to dissatisfaction with DBSI's decision not to provide $23 million to Van Leer. Nothing alleged establishes a lack of truthfulness by DBSI. It is obvious that DBSI made a business decision to revalue the proposal Van Leer had presented. To draw from that

---

[2] It is not difficult to suppose that due diligence included a review of the materials filed in bankruptcy court and, further, that DBSI saw in those materials considerable documentation that other entities in the world of finance had valued the royalty stream at a far lower price than DBSI's preliminary estimate. It is equally conceivable that DBSI might have reevaluated its options based on the materials filed in the bankruptcy case.

inference a conclusion that DBSI was untruthful in its dealings with Van Leer is illogical. This count also fails to state a claim.

Van Leer's last cause of action is fraud. He alleges DBSI "falsely stated to Van Leer that it intended to act with due diligence in processing his loan application in the amount of approximately $23 million, with the financing to be supported by the Royalty Stream payments." (Compl. ¶ 51.) This is a variation on the negligent-misrepresentation count; the only difference is the level of intent. Both counts fail because of the absence of factual allegations that permit the Court to conclude that DBSI was untruthful. Finally, with regard to all of the counts, Van Leer claimed damages of $10 million. Even if the Court gave him the benefit of the doubt as to the substance of his causes of action, he has offered no factual allegations to support this damage claim.[3]

Although Van Leer expresses (in a footnote to his response to DBSI's motion to dismiss) an interest in amending his complaint should the motion to dismiss be granted (Pl.'s Opp. at 42 n.11), he has not provided either specific factual allegations or a proposed amended complaint that would cure the deficiencies noted in the complaint. Consequently, leave to amend will be denied. Because the Court has decided the case based upon a failure to state a claim under Rule 12(b)(6), it has not also addressed the arguments made by DBSI that this Court lacks jurisdiction or is an improper venue for Van Leer's case. A separate order will be entered dismissing the case.

Dated: _____February 2, 2011_____          _____/s/_____
                                                James K. Bredar
                                                United States District Judge

---

[3] If one subtracts $16.9 million (the amount paid by DBSI) from $23 million (the amount Van Leer hoped to get from DBSI), the difference is only $6.1 million. How Van Leer arrives at $10 million is unexplained.